Argued October 1, affirmed October 25, rehearing denied December 3, 1918, motion for *nunc pro tunc* order denied January 7, 1919.

## AHONEN *v.* HRYSZKO.*

(175 Pac. 616; 177 Pac. 63.)

**Appeal and Error—Review—Evidence.**

1. It is the function of the jury to determine the credibility of the evidence; a matter with which the Supreme Court cannot concern itself.

---

*On the question of negligence of child injured by automobile in street, see note in 51 L. R. A. (N. S.) 1008.

As to when question of contributory negligence of child is for the jury, see note in 17 L. R. A. 79.

On the negligence of child in running in front of automobile in street, see note in 26 L. R. A. (N. S.) 435.    ·    REPORTER.

Municipal Corporations—Use of Streets—Injuries—Negligence and Proximate Cause—Questions for Jury.

2. In an action for injuries to five-year old boy, struck by automobile in crossing street, whether defendant was negligent, and whether such negligence was proximate cause of injuries, *held* for jury.

Evidence—Expert Opinion—Medical Testimony.

3. In action for injuries, testimony of doctor that skull consists of two tables of bone, with spongy bone between them, and that fracture might extend farther on inside than on outside, was proper expert testimony.

Appeal and Error—Harmless Error—Evidence.

4. In an action for injuries, any error in admission of medical testimony as to composition of skull *held* rendered harmless by witness' assurance he did not know whether or not particular fracture extended into motor area of brain.

Municipal Corporations — Injuries from Automobile — Contributory Negligence—Question for Jury.

5. In action for injuries to five-year old boy when struck by automobile in crossing street, whether child's acts constituted contributory negligence *held* for jury.

Trial—Instruction—Evidence.

6. In action for injuries to five-year old boy, struck by automobile while crossing street, where defendant stated he saw the child, instruction hypothesizing fact defendant did not see him was properly refused.

Municipal Corporations—Injuries by Automobile—Negligence.

7. Mere fact that automobile driver keeps within statutory speed limit does not absolve him from charge of negligence in striking child, who attempts to cross street before him.

[As to municipal regulation of automobiles with respect to use of equipment, use of streets and the like, see note in **Ann. Cas. 1916E, 1047.**]

Damages—Personal Injuries—Future Damages.

8. Plaintiff need not prove the future effect of his personal injury beyond a reasonable doubt, but only to a reasonable certainty, which is not negatived by a mere possibility of plaintiff's not suffering any future damages.

## ON MOTION.

Appeal and Error—Disposition—Final Judgment.

9. The judgment of the supreme court is final when the opinion is handed down.

Appeal and Error—Disposition of Cause—Nunc Pro Tunc Order.

10. Supreme Court, after having examined Circuit Court's judgment and entered judgment against appellant and his sureties in accordance with section 559, subdivision 4, L. O. L., will not, upon subsequent death of one of the sureties, direct lower court to enter

judgment against sureties upon appeal bond *nunc pro tunc* as of the date of the decision affirming judgment; its function having been exhausted upon affirmance of judgment.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.

This is an action to recover compensation for personal injuries. The complaint alleges that the plaintiff, a child of the age of five years at the time of the accident, was crossing Mississippi Avenue at its intersection with Fremont Street, in the City of Portland, and that the defendant, being the owner of a certain automobile, negligently drove the car against and upon him, causing the injuries of which complaint is made. It is charged that the defendant was negligent in several particulars, among which are, that he was driving the vehicle at a rate of speed in excess of twenty miles an hour, that he was driving at a greater speed than was reasonable and proper, that he did not slow down on approaching the intersection of the streets, that he did not sound any warning or signal, that he failed to steer the car in such a manner as to avoid the injury, and that he was traveling on the left side of the street.

The answer admits that the plaintiff was only five years of age; admits the collision and injury, and denies all of the allegations of negligence, and averments relating to plaintiff's right to recover. It is then affirmatively asserted that defendant was traveling at a speed not exceeding eight miles per hour, sounding the horn at proper intervals, and in full compliance with the ordinances and traffic regulations of the City of Portland, and that at or near the intersection of the two streets, the plaintiff crossed Mississippi Avenue in front of the automobile, and after he had crossed in front thereof, and was clear of the car, suddenly and without warning to defendant, he turned back to recross the street, and instantly ran in front of the car

and collided with it.    It is also averred that the injury was the result of a pure accident and was unavoidable.

A reply joined issue with the affirmative answer, and a trial to a jury was had, resulting in a verdict and judgment for plaintiff, and defendant appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George Arthur Brown.*

For respondent there was a brief over the names of *Mr. R. R. Giltner* and *Mr. Edward J. Brazell,* with an oral argument by *Mr. Giltner.*

BENSON, J.—1, 2. Defendant argues that the trial court should have granted his motion for a judgment of nonsuit at the conclusion of plaintiff's case, and that it was also error to deny his motion for a directed verdict.    These two assignments of error may properly be considered together, since each constitutes a demurrer to the evidence.    This brings us to a consideration of the testimony in the case.    It is agreed that the defendant was traveling in a northerly direction on Mississippi Avenue, while the plaintiff and his seven-year old sister were walking east on Fremont Street. Albert Kosciolek testifies that he saw plaintiff and his sister at the curb of the northwest corner of the intersection of the two streets; that the girl stood on the curb, while the boy ran across the street; that the girl screamed for him to come back, and then while running back to the west side of the street he was struck by the automobile; that the auto was going fast; that it was going at the rate of fourteen or fifteen miles an hour; that the rear end of the car was fifteen feet beyond the boy when it stopped.    He also says that defendant did not sound his horn, or give any warning

signal; that when defendant's car reached the intersection of the two streets he put on his brakes and the car skidded over to the other side and struck the boy. Lena Rose testifies that when defendant reached the intersection he was traveling on the west, or left side of the street. The defendant himself testifies that he saw the children in the street while he was still sixty or seventy feet from them. As to the credibility of this evidence we cannot concern ourselves; that is the function of a jury, and if they believed these witnesses, they might very properly have found that the defendant was negligent and that such negligence was the proximate cause of the injury. The motions for nonsuit and a directed verdict were therefore properly denied.

3, 4. It is next urged that the court erred in admitting certain testimony of Dr. F. S. Tucker, as follows:

"Q. Do you know whether or not it [the fracture] extended into the motor area of the brain?

"A. Well, it was pretty close to the motor area, and sometimes you have a fracture of what is called the inner table of the skull, which does not show on the outside. That is the skull consists really of two layers of bone, of the spongy portion between, and it is impossible to tell sometimes how far the fracture of the inner table—

"To which question and answer, defendant by his counsel objected as follows:

"Mr. Brown: I object to this as to what might possibly be underneath. I object to the witness testifying to anything he does not know.

"The Court: Objection overruled. Exception allowed.

"To which the witness answered:

"A. To explain to you, the skull consists of two tables of bone with a spongy bone between the two. And sometimes a fracture may extend further on the

inside than it does on the outside.   Of course a fracture of that kind cannot always be seen.

"The witness further said (page 35, Tr.) that he did not know whether the fracture extended into the motor area of the brain."

This appears to us to be clearly within the realm of proper expert testimony, and if it were otherwise, the error was rendered harmless by the witness' assurance that he did not know whether or not the fracture extended into the motor area of the brain.

5. The remaining assignments of error for which defendant contends, involve the subject of the court's refusal to give to the jury three instructions which were requested by him.   The first of these reads as follows:

"2. If the evidence shows that just prior to the accident the plaintiff in company with his sister crossed the street in front of the defendant's automobile, you may find in view of all the circumstances that such crossing was as a matter of fact or in effect a warning to the plaintiff the danger of recrossing said street without first looking to see if any vehicles were approaching, and if the plaintiff suddenly turned without warning, and apparently without looking, or heeding if he did look, and ran directly in front of the defendant's automobile in an attempt to recross said street, he would then be guilty of such contributory negligence as would preclude him from a recovery even though the defendant were also negligent, and your verdict should be for the defendant."

This instruction seeks to impose upon the court the burden of saying, as a matter of law, that a certain series of facts, in the given case, would constitute contributory negligence.   It must be remembered that the plaintiff was a child, only five years of age.   The case of *Wallace* v. *Suburban Ry. Co.*, 26 Or. 174 (37 Pac. 477, 25 L. R. A. 663), was a personal injury case

wherein a child six years old was run over and killed by a street-car, and in that instance, Mr. Chief Justice BEAN, speaking for the court, says:

"If we assume that it can be asserted, as a proposition of law, that a child of the age of the deceased is *sui juris*, so as to be chargeable with negligence, the law is not so unreasonable or unjust as to require of it the same degree of reason and consideration in avoiding the consequences of the negligence of others that is required of persons of full age and capacity, and it should be left to the jury to determine whether the child in attempting to pass in front of the car, acted with that degree of care and prudence which might reasonably be expected, under the circumstances, of a child of her age and capacity. She was lawfully in the street, and was as much entitled to use the crossing as the defendant corporation. In attempting to do so she was run over and killed by the car of the defendant, running at an excessive and dangerous rate of speed. The negligence of the defendant must, therefore, be assumed, and it was for the jury to judge whether the child's conduct in attempting to cross the track in front of the approaching car without looking or listening, was characterized by any want of that degree of care which could reasonably have been expected of a child of her age."

This doctrine has been approved by this court in *Schleiger* v. *Northern Terminal Co.,* 43 Or. 4 (72 Pac. 324), and it follows that the request was properly refused.

6, 7. The next request which was denied by the court was an instruction in this language:

"3. Even if the plaintiff, a child of immature years, proceeding in reckless haste, however natural to his age, should suddenly and unexpectedly run or throw himself in front of the defendant's automobile while in motion, and such motion was not exceeding the speed limit, the driver of the car not seeing him, or in the

exercise of ordinary care not having time to stop the car before colliding with him, it is obvious that the plaintiff's own act is the sole cause of the injury; and, even though he may be entirely free from blame, the most that can be said in his favor is that the case is one of unavoidable accident, and the owner of the car is no more responsible for plaintiff's injury than would have been the owner of a wall against which the plaintiff had thoughtlessly thrown himself."

This statement of the law is subject to two criticisms. In the first place, the record is not only destitute of evidence tending to prove that defendant did not see the child, but the defendant himself says that he did see him. The other objection lies in the erroneous suggestion that keeping within the statutory speed limit would absolve the defendant from a charge of negligence. The instruction was properly rejected.

8. It is also urged that error was committed in refusing to instruct the jury as follows:

"4. If the plaintiff can recover at all he can recover only for his actual damages, and for such future damages as the evidence makes reasonably certain will necessarily result from the injuries sustained. Reasonable probability of future damages is not sufficient. It must be reasonably certain, and if there is any possibility of the plaintiff not suffering any future damages you cannot assess any damages for such prospective damage, or damage that is liable to occur."

The vice of this statement is contained in this sentence:

"It must be reasonably certain, and *if there is any possibility of the plaintiff not suffering any future damages*, you cannot assess any damages for such prospective damage, or damage that is liable to occur."

Such an interpretation would require the plaintiff to prove the future effect of a personal injury beyond a

reasonable doubt, which is not the law. Mr. Sedgwick, in his work on Damages, Volume 1, Section 172, says:

"The reasonable certainty required, however, does not mean absolute certainty, but reasonable probability."

The refusal of this request was not error.

The judgment of the lower court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.

---

Motion denied January 7, 1919.

ON MOTION FOR NUNC PRO TUNC ORDER.

(177 Pac. 63.)

PER CURIAM.—From a judgment of the Circuit Court against him the defendant appealed, giving an undertaking for a stay of proceedings, conditioned in effect that if the judgment should be affirmed the appellant would satisfy it so far as affirmed: Section 551, subd. 1, L. O. L. On October 25, 1918, the judgment of the Circuit Court was in all things affirmed and judgment here entered against the appellant and his sureties, in accordance with Section 559, subdivision 4, L. O. L. A petition for rehearing was filed and overruled. On December 4, 1918, the attorneys for the plaintiff and respondent by motion suggested that since the decision affirming the judgment of the Circuit Court one of the sureties on the appeal bond had died, upon which basis the plaintiff moved, "that this court in its mandate to the Circuit Court of Multnomah County, Oregon, direct said Circuit Court to enter judgment against the sureties upon the appeal bond on this ap-

peal, *nunc pro tunc* as of the date of the decision of this court affirming the said judgment.''

9, 10. As ruled in *Zeuske* v. *Zeuske,* 55 Or. 65, 87 (105 Pac. 249, 103 Pac. 648, Ann. Cas. 1912A, 557), the judgment of the Supreme Court is final when the opinion is handed down. At the time of our decision of this case all the parties, including the sureties, were alive and subject to the jurisdiction of this court, but as this is a tribunal of only special and limited authority, that is, only with power to affirm, modify or reverse the judgment of the Circuit Court in an action at law, our function was exhausted when we affirmed the judgment. We cannot presume in advance that the Circuit Court will act erroneously in the proceeding as of course yet to be taken before it. If any substitution is necessary, it can be worked out in that court and we must presume that the action to be taken there will be regular. Any direction of ours in advance would be gratuitous. The doctrine of substitution of parties was examined in *Service & Wright Co.* v. *Sumpter Valley Ry. Co.,* 88 Or. 554 (171 Pac. 202), with the result that it was there held that this court can substitute parties only for the purposes of its own jurisdiction, and if any further proceeding is required before the Circuit Court additional substitution must be accomplished there.

For these reasons the motion to direct the Circuit Court in advance to render a particular judgment must be denied. MOTION DENIED.